UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

RODNEY SCHOEMANN                                    CIVIL ACTION

VERSUS

PRECIOUS MINERALS MINING                    NO. 20-00281-BAJ-EWD
AND REFINING CORPORATION,
ET AL.

## RULING AND ORDER

Before the Court is Plaintiff's **Motion for Entry of Entry of Default Judgment (Doc. 14)**. Plaintiff sued Defendants Precious Mineral Mining and Refining Corporation ("PMMR") and its president and director, Bill L. Minor ("Minor"), following their default on a promissory note. The Clerk of Court entered preliminary defaults as to both Defendants and notified both Defendants. Plaintiff now moves for issuance of default judgment against both Defendants. For the reasons assigned, Plaintiff's Motion is granted.

## I.   BACKGROUND

### A. Facts

Plaintiff, a citizen of Louisiana, agreed to lend Defendants PMMR, a corporate citizen of Nevada, and Minor, a citizen of Pennsylvania, $150,000 for business expenses. (Doc. 1). This agreement was memorialized on September 28, 2017, when Minor, for himself personally and on behalf of PMMR, executed a Senior Promissory Note with Plaintiff. (Doc. 1 at ¶ 8). The promissory note also contained an option agreement, which gives Plaintiff the right to purchase 650,000 shares of common

1

stock of PMMR. (Doc. 14-1, p. 7). The entire $150,000, plus interest at a rate of 5% per annum, was due and payable on March 23, 2018. (Doc. 1, at ¶ 9). Defendants failed to make any payments on the loan, and defaulted.

Under the terms of the agreement in the event of default, Defendants were to pay a default fee of 10% of the amount due, including principal and interest. *Id.* at ¶ 10. In addition, interest would increase to the highest amount legally allowed in Louisiana. *Id.* If the promissory note was placed in the hands of an attorney for collection, the Defendants agreed that they would pay any and all costs of collection, including any and all attorney's fees, court costs, expert fees, and expenses. *Id.* at ¶ 11.

Because of the default, Plaintiff alleges that Defendants are jointly and severally liable to Plaintiff for:

1. The $150,000 principal;

2. 5% interest on the principal balance during the time of the loan;

3. A 10% default fee;

4. 18% interest, per annum, from March 24, 2018 through the date of judgment;

5. Reasonable attorney's fees for the collection of the obligations;

6. All costs incurred by Plaintiff in the collection of the Note.

*Id.* at ¶ 15.

However, Plaintiff does not request that the promissory note be dissolved. In particular, Plaintiff requests that the judgment preserve his rights under the option agreement. (14-1, at p. 9)

### B. Procedural History

Plaintiff filed his Complaint on May 6, 2020. (Doc. 1) Each Defendant was sent a Notice of Lawsuit and Request to Waive Service of a Summons by Federal Express, along with a request to sign and return a Waiver of the Service of Summons form. While Minor appeared to receive the forms, (Doc. 9-4), he never responded to them. Defendant PMMR's forms were returned as undeliverable. *Id.* On May 29, 2020 and June 8, 2020, Plaintiff requested the Clerk to issue summonses to both Defendants (Doc. 4, Doc. 7). On June 2, 2020 and June 11, 2020 the summonses and the copy of the Complaint were served by Federal Express on both Defendants. (Doc. 9-6, 9-8). Defendants once again failed to respond.

On July 6, 2020, Plaintiff moved for entry of default by the Clerk. (Doc. 9, Doc. 10). On July 7, 2020, the Clerk entered defaults against each Defendant. (Doc. 12, Doc. 13). Despite notice of the entry of default sent by the Clerk to each Defendant, neither has responded or filed responsive pleadings.

On August 7, 2020, Plaintiff moved for entry of default judgment. (Doc. 14).

## II.  STANDARD OF REVIEW

Rule 55 of the Federal Rules of Civil Procedure sets forth certain conditions under which default may be entered against a party, as well as the procedure by which a party may seek the entry of default judgment. The United States Court of Appeals for the Fifth Circuit has adopted a three-step process for the entry of default

3

judgment. *See New York Life Ins. Co. v. Brown*, 84 F.3d 137, 141 (5th Cir. 1996). First, a default occurs when a party "has failed to plead or otherwise defend" against an action. Fed. R. Civ. P. 55(a). Next, an entry of default must be entered by the clerk when the default is shown "by affidavit or otherwise." *See id.*; *New York Life*, 84 F.3d at 141. Third, a party may apply to the Court for a default judgment after an entry of default. Fed. R. Civ. P. 55(b); *New York Life*, 84 F.3d at 141.

After a party files for a default judgment, Courts must apply a two-part process to determine whether a default judgment should be entered. First, the Court must ascertain if default judgment is procedurally justified. *Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998). Several factors are relevant to this inquiry, including: (1) whether there are material issues of fact; (2) whether there has been substantial prejudice; (3) whether the grounds for default have been clearly established; (4) whether the default was caused by excusable neglect or good-faith mistake; (5) the harshness of the default judgment; and (6) whether the Court would think itself obliged to set aside the default on a motion by Defendant. *Id.* Default judgments are disfavored due to a strong policy in favor of decisions on the merits and against resolution of cases through default judgments. *Id.* Default judgments are "available only when the adversary process has been halted because of an essentially unresponsive party." *Sun Bank of Ocala v. Pelican Homestead & Sav. Ass'n*, 874 F.2d 274, 276 (5th Cir. 1989) (citation omitted).

Second, the Court must determine whether the plaintiff's complaint sufficiently sets forth facts establishing that it is entitled to relief. *Nishimatsu Constr.*

*Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975); *Hamdan v. Tiger Bros. Food Mart, Inc.*, No. CV 15-00412, 2016 WL 1192679, at *2 (M.D. La. Mar. 22, 2016). A default judgment may be supported by "well-pleaded allegations, assumed to be true." *Id.* (citing *Thomson v. Wooster*, 114 U.S. 104, 5 (1885)). The Defendant, however, is "not held to admit facts that are not well-pleaded or admit to conclusions of law." *Id.*

Once the Court establishes that default judgment is justified, the Court must determine what form of relief Plaintiff should receive. *United States v. 1998 Freightliner Vin #: 1FUYCZYB3WP886986*, 548 F.Supp.2d 381, 384 (W.D. Tex. 2008). A defaulting defendant "concedes the truth of the allegations of the Complaint concerning defendant's liability, but not damages." *Ins. Co. of the W. v. H & G Contractors, Inc.*, 2011 WL 4738197, *4 (S.D. Tex., Oct. 5, 2011). Generally, "damages are not to be awarded without a hearing or a demonstration by detailed affidavits establishing the necessary facts." *J & J Sports Prods. v. Morelia Mexican Rest., Inc.*, 126 F. Supp. 3d 809, 814; *See also United Artists Corp. v. Freeman*, 605 F.2d 854, 857 (5th Cir. 1979). However, no hearing is required when "the amount claimed is a liquidated sum or one capable of mathematical calculation." *James v. Frame*, 6 F.3d 307, 310 (5th Cir. 1993).

## III.   ANALYSIS

### A. Whether Default Judgment is Procedurally Justified

The Court must first decide whether the entry of default judgment is procedurally justified by considering the *Lindsey* factors. First, there are no issues of material fact. Plaintiff loaned Defendants a specific sum of money, to be paid back

5

under conditions laid out in a contract. Defendants failed to adhere to the contract and failed to pay off the loan. Second, there has been substantial prejudice, as Defendants have deprived Plaintiff of the money he is owed for over two years, despite repeated attempts to collect the debt. Third, the grounds for default are clearly established as, despite receipt of multiple summonses and notice of suits, Defendants have failed to respond. Fourth, there is no indication that the default was caused by excusable neglect or a good-faith mistake. Fifth, default judgment is not overly harsh in this case, as the terms of the contract Defendants signed were clear and unambiguous, Defendants' failure to appear or otherwise defend their nonpayment mitigates the harshness of the default judgment. Sixth, and finally, there has been no information presented that demonstrates to the Court that it would be obliged to set aside default on a motion by Defendant.

Therefore, the Court finds that the six *Lindsey* factors weigh in favor of default.

## B. Whether Plaintiff's Complaint Establishes a Viable Claim for Relief

A default judgment "must be supported by well-pleaded allegations and must have a sufficient basis in the pleadings." *Wooten v. McDonald Transit Assocs., Inc.,* 788 F.3d 490, 498 (5th Cir. 2015) (citing *Nishimatsu Construction Co. v. Houston National Bank,* 515 F.2d 1200, 1206 (5th Cir. 1975)). Pleading requirements for a default judgment are similar to those governed by Rule 8. *Wooten,* 788 F.3d at 498. Rule 8 requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The primary purpose of Rule 8(a)(2) is to

"give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957).

Plaintiff alleges breach of contract due to Defendants' failure to make payments on the promissory note. Jurisdiction is based on diversity, so the Court applies the substantive law of the forum, Louisiana. *See Boyett v. Redland Ins. Co.*, 741 F.3d 604, 607 (5th Cir. 2014) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938)). Because Louisiana choice-of-law rules are substantive, they apply here. *See Weber v. PACT XPP Tech., AG*, 811 F.3d 758, 770 (5th Cir. 2016) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496–97 (1941)). Louisiana's choice-of-law rules require the Court to honor a contractual choice-of-law provision, except to the extent the law chosen "contravenes the public policy of the state" whose law would otherwise apply. La. Civ. Code art. 3540.

The promissory note expressly provides that it is governed by Louisiana law. (Doc. 1-1, the "Promissory Note", at ¶ k). To recover for breach of contract under Louisiana law, the Plaintiff must demonstrate: "(1) the obligor's undertaking of an obligation to perform; (2) the obligor failed to perform the obligation (i.e. breach); and (3) the breach resulted in damages to the obligee." *Regions Bank v. C.H.W. Restaurant, LLC*, No. CV 17-8708, 2018 WL 3136003, at *4 (E.D.La. June 27, 2018) (citations omitted).

PMMR and Bill Minor agreed to borrow $150,000 from Plaintiff to pay for various business expenses related to the development of their Orykta property in Nevada. *Id.* at p. 1. At the time of the agreement's signing, Minor was the President

7

and Director of PMMR. *Id.* at 3. PMMR and Bill Minor in his personal capacity "unconditionally agree[d] and promise[d] to pay to the order of Rodney Shoemann. . . the principal sum of One Hundred Fifty Thousand Dollars & 00/1000 Cents ($150,000) (the 'Principal Indebtedness'), together with interest on the outstanding Principle Indebtedness. . . at the Interest Rate defined [by the Promissory Note]." *Id.* at p. 1. The interest rate was set at five percent per annum. *Id.*

The maturity date of the debt was March 23, 2018. *Id.* at ¶ a. Defendants agreed to pay the Principal Indebtedness, along with any interest on the loan, on the maturity date. *Id.* at ¶ b. Defendants also agreed that if the loan was "placed in the hands of an attorney for collection, by suit or otherwise to enforce its collection," they would pay any and all costs of collection. *Id* at ¶ i. In addition to any relevant collection fees, in the event of default the Defendants agreed to "pay a one-time only default fee of ten percent of the total amount due [] on the maturity date," including principal and interest. *Id.* at ¶ e. Following default, Defendants agreed that the per annum interest rate would be increased to "the highest amount legally allowed" under Louisiana law. *Id.* La. R.S. 9:3509, which governs interest on commercial and business loans, permits a lender to prospectively increase the simple interest rate of commercial loans with a principal balance of less than $250,000 to the greater of eighteen percent or three percentage points over the original contract rate in effect prior to default. La. R.S. 9:3509B(1)(A).

Defendants failed to make any payments and defaulted on the loan obligation. This caused damage to the Plaintiff. Plaintiff's Complaint adequately pleaded the facts above in order to establish a breach of contract claim. Despite Plaintiff's best efforts, Defendants failed to respond. Defendants were put on notice of the consequences in the event of a default in their promissory note when the Plaintiff initially filed a Complaint against them, when the Court issued summons against them, and again when an entry of default was entered against them by the Clerk. To date, Defendants have failed to make payments. Considering these facts, Plaintiff has established a viable claim for relief.

### C. Calculation of Damages

Plaintiff requested judgment against Defendants, jointly and severally, for: (1) the $150,000 principal and any accompanying interest; (2) the default fee of 10% of the loan amount, including interest; (3) reasonable attorney's fees, and; (4) all costs incurred by Plaintiff in collection of the promissory note. Plaintiff has provided an affidavit demonstrating the amount owed, as well as an affidavit from his attorney detailing the fees he charged for working on this action. (Doc. 14-3; Doc. 14-4).

The calculation of the amount owed is a simple one. Defendants borrowed $150,000 from Plaintiff, at a five percent annual simple interest rate. Five percent of $150,000 is $7,500. There are 365 days in a typical year, and 175 days[1] elapsed between when the loan began to collect interest on September 29, 2017 and the

---

[1] Schoemann's affidavit erroneously states that there are 176 days in between September 29, 2017 and March 23, 2018.

maturity date, resulting in a total interest accumulated of $3,595.89. Thus, the total amount due on the maturity date was $153,595.89.

Because this sum was not paid on the maturity date, Defendants are subject to a default fee[2] of ten percent of the total amount owed on March 23, 2019, including interest. This fee, which was due on March 24, 2018, amounted to $15,359.59. Therefore, the total amount due on March 24, 2018 was $168,955.48.

Following further nonpayment, the loan's interest rate increased to eighteen percent, the maximum amount permitted by Louisiana law.[3] For the first year of nonpayment, March 24, 2018 to March 23, 2019, the loan accrued $30,328.67 in interest, leading to a total loan sum of $199,284.15. For the second year of nonpayment, March 24, 2019 to March 23, 2020, the loan accrued $36,881.60 of interest, leading to a total sum owed of $236,165.75.[4] The loan continues to accrue interest at a rate of 18% per annum, or $116.02 per day of nonpayment since March 24, 2020.

Attorney's fees are warranted in this case, because the parties agreed in the contract that Defendants would be liable for attorney's fees if the matter went to collection.[5] The attorneys in this matter have charged $11,114.38 for their services.

---

[2] Stipulated damages are permissible under Louisiana law. *See* La. Civ. Code art. 2005. Stipulated damages may not be modified by the Court unless "they are so manifestly unreasonable as to be contrary to public policy." La. Civ. Code art. 2012. An obligee may demand both stipulated damages and performance when the damages have been stipulated for delay. La. Civ. Code art. 2007.

[3] *See* LA Rev. Stat. § 9:3509B(1)(a).

[4] Schoemann's affidavit erroneously states that there were 366 days from March 24, 2019 to March 23, 2020. In fact, there are 366 days in between March 24, 2019 and March 24, 2020 as 2020 is a leap year.

[5] "If the parties, by written contract, have expressly agreed that the obligor shall also be liable for the obligee's attorney fees in a fixed or determinable amount, the obligee is entitled to that amount as well." La. Civ. Code. art. 2000.

(Doc. 14-4). Thus, Defendants are liable to Plaintiff, jointly and severally, for $277,677.57.

### D. The Option Agreement

Plaintiff seeks damages for breach of contract but asks that the Court uphold the Option Agreement attached as Attachment A to the promissory note. There is no express dissolution or termination provision in the promissory note. Under Louisiana law, when an obligor fails to perform under a contract, the obligee has the right—but not the obligation—to "the judicial dissolution of the contract or, according to the circumstances, to regard the contract as dissolved." La. Civ. Code art. 2013. As Plaintiff has chosen not to avail himself of judicial dissolution, and indeed specifically calls for the contract not to be dissolved, the rights under the Option Agreement signed by all parties shall remain.

## IV.    Conclusion

Accordingly,

**IT IS ORDERED** that Plaintiff's **Motion for Entry of Entry of Default Judgment (Doc. 14)** is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendants, jointly and severally, are liable to Plaintiff for $277,677.57, which constitutes the loan principal, the accompanying interest, and attorney's fees.

**IT IS FURTHER ORDERED** that postjudgment interest at the rate provided by 28 U.S.C. § 1961, which shall be computed daily and compounded annually until this Judgment has been paid in full.

A separate judgment will be issued.

Baton Rouge, Louisiana, this _10th_ day of December, 2020

**JUDGE BRIAN A. JACKSON**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**